## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN MCGEE,

      Plaintiff,

    v.

CONYNGHAM TOWNSHIP,
CONYNGHAM TOWNSHIP BOARD
OF SUPERVISORS, CONYNGHAM
TOWNSHIP AUTHORITY,
SUPERVISOR LINDA TARLECKI,
individually and as Supervisor,
SUPERVISOR TODD CROKER,
individually and as Supervisor,
SUPERVISOR JOSEPH SHRINER,
individually and as Supervisor,

      Defendants.

No. 4:17-CV-01639

(Judge Brann)

## MEMORANDUM OPINION

### APRIL 10, 2020

Defendants moved for summary judgment on all four counts of Plaintiff John McGee's Second Amended Complaint.[1]  For the reasons that follow, the Court will grant Defendants' motion in part and deny it in part.

## I.  BACKGROUND AND PROCEDURAL HISTORY

McGee's Second Amended Complaint, at its core, alleges that Conyngham Township and its Supervisors retaliated after McGee made comments and investigated aspects of the Township's finances and operations.[2]

---

[1]  *See* Docs. 21, 36, 40.

The Court has resolved Defendants' motion to dismiss McGee's Amended Complaint. The Court dismissed McGee's First Amendment retaliation claim because McGee had not made out causation.[3] The Court dismissed McGee's Fourteenth Amendment substantive due process claim because McGee had not made out a protected property interest that Defendants had curtailed.[4] Further, McGee could not establish a municipal liability claim under *Monell v. Department of Social Services of City of New York*. McGee also could not sustain a claim for punitive damages, because McGee had not stated an underlying federal civil rights claim.[5] The Court disposed of McGee's state law claims by holding that the Political Subdivision Tort Claims Act afforded certain Defendants immunity,[6] and that McGee had not alleged the requisite physical harm to sustain an intentional infliction of emotional distress claim.[7]

Now, with McGee having further amended his complaint, Defendants have moved for summary judgment. Their motion is ripe for disposition.

---

[2] *See* Doc. 21.

[3] *See id.* at 9-12.

[4] *See id.* at 12-15.

[5] *See id.* at 15-16, 23-24.

[6] *See id.* at 17-20.

[7] *See id.* at 21-23.

## II.    DISCUSSION

### A.    Standard of Review

#### 1.    Basic Standard

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8]  A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[9]  To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[10]  When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[11]

#### 2.    Review of Self-Serving Testimony

Much of the evidence before the Court is self-serving deposition testimony. When considering McGee's self-serving testimony, the Court will weigh whether this "testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit [it] despite its self-serving nature."[12]  Therefore, the

---

[8]   Fed. R. Civ. P. 56(a).

[9]   *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[10]   Fed. R. Civ. P. 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[11]   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

[12]   *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012); *see also McBride v. Am. Substance Abuse Professionals, Inc.*, 917 F. Supp. 2d 419, 426-27 (E.D. Pa. 2013).

fact that McGee has presented self-serving deposition testimony is not, standing alone, enough to render it objectionable. Instead, the Court will weigh this testimony against the full assembly of the factual record.

### B. Undisputed Facts[13]

I now turn to the undisputed facts of this matter.

#### 1. John McGee and the Conyngham Township Board of Supervisors

Plaintiff John McGee owns two rental properties in Conyngham Township, Columbia County, Pennsylvania.[14] Before January 2017, McGee attended many meetings of the Township's Board of Supervisors and brought up issues that he thought were concerning. Two representative issues were the Township's enforcement of municipal code ordinances and the audits of the Township's finances.[15]

At that time, the Board consisted of Carl George and Defendants Linda Tarlecki and Todd Croker.[16] Tarlecki served as a Supervisor from January 2016 to the end of 2017; she also served as secretary for the Township from April 1, 2016

---

[13] I have drawn all inferences in these facts in McGee's favor. *See* Standard of Review, above at § II.A.

[14] Doc. 39 at ¶ 4.

[15] *Id.* at ¶¶ 4-5.

[16] *Id.* at ¶ 6.

to January 2, 2018.[17]  Tarlecki also served as secretary for the Township's Sewer Authority when it came into existence in 2011.[18]

McGee himself began serving as a Supervisor in January 2018.[19]  As a Supervisor, McGee would make comments at the Board's monthly meetings.[20] Tarlecki expressed in her deposition that McGee's "main complaints and everything else was against Joe Shriner," a Supervisor from August to December 2017 who took over for George after George's resignation.[21]  According to Tarlecki, some of McGee's complaints that she could remember were "Joe whipping him the bird," "Joe cursing," and "[Joe's] dog defecating on [McGee's] property."[22]

### a.  The Other Supervisors' Attitudes Towards McGee

Croker never heard Tarlecki or Shriner communicate to him any negative feelings about McGee or make any negative statements about McGee.[23]  Shriner, however, stated in his deposition that he "absolutely" had a lot of anger towards McGee and would consider himself unfriendly to McGee when he was a

---

[17]  *Id.* at ¶¶ 53, 60.

[18]  *Id.* at ¶ 52.

[19]  *Id.* at ¶ 7.

[20]  *Id.* at ¶ 15.

[21]  *Id.* at ¶¶ 62-63.

[22]  *Id.* at ¶ 62.

[23]  *Id.* at ¶ 42.

Supervisor.[24]  But according to Shriner, when he was a Supervisor: "I wasn't looking to do anything towards anybody in a position that I was taking up for the time being. In other words, I wasn't going to abuse my situation. I had no interest in doing so."[25]

### 2. McGee's Right-to-Know Requests

McGee sent a Right-to-Know request to the Township on February 21, 2017.[26]  In this request, McGee asked for payroll reports, reimbursement requests, and other documents.[27]  On February 24, 2017, by return correspondence, the Township stated that "[w]e acknowledge your right to know request and are compiling documents to respond."  The Township requested an extension of thirty days to satisfy McGee's request.[28]  On March 27, 2017, the Township further responded, indicated that "[t]he documents that you have requested" were available to pick up at the Township's office.[29]  McGee acknowledged in his deposition that the Township complied with this first request.[30]

On June 14, 2017, McGee sent the Township another Right-to-Know request.  McGee's second request sought payroll and reimbursement reports from

---

[24]  *Id.* at ¶ 45; Doc. 43-2 at 15.

[25]  Doc. 39 at ¶ 46.

[26]  *Id.* at ¶ 19; Doc. 21 Ex. 1.

[27]  *See* Doc. 21 Ex. 1.

[28]  *Id.* Ex. 2.

[29]  *Id.* Ex. 3.

[30]  *See* Doc. 41-2 at 117.

the Township.[31]  Croker testified that the Township complied with all of McGee's requests.[32]  McGee testified that he was dissatisfied with the Township's compliance with this second request.[33]

McGee challenged perceived deficiencies with the Township's responses to his June 14, 2017 request by appealing to Pennsylvania's Office of Open Records. The Office of Open Records dismissed McGee's appeal.  McGee did not file a further appeal to the Court of Common Pleas of Columbia County.[34]

### 3. Tarlecki's Right-to-Know Request

On July 24, 2017, Tarlecki served McGee with a purported Right-to-Know request from the Township.[35]  McGee believed this was a legitimate request.[36]  But he never complied with it.  He never contacted the Township Solicitor about it.  He never contacted private counsel about it.  And he never contacted any of the Township Supervisors about it.[37]

---

[31]  Doc. 21 Ex. 4.

[32]  Doc. 39 at ¶ 36.

[33]  Doc. 41-2 at 117.

[34]  Doc. 39 at ¶ 23.

[35]  The parties dispute how much Croker knew about Tarlecki's request.  *See* Doc. 39 at ¶ 37; Doc. 49 at ¶¶ 40, 60-63.

[36]  Doc. 39 at ¶ 24.

[37]  *Id.* at ¶ 25.

### 4. Rodney and Tina Mordan, and their Letter to the Board

Rodney and Tina Mordan used to reside at McGee's property at 245 Second Street. The Mordans are deaf and mute.[38] On August 30, 2017, the Mordans wrote a letter about McGee's operating of their property.[39] Per McGee, the Mordans' letter contained false information about "allegations" about "problems with the property."[40] In relevant part, the letter lists many perceived issues with the 245 Second Street property, describes McGee's perceived failings in trying to remedy some of the issues, states that the Mordans plan to move out of the property, and comments on McGee's "fanc[y] house," "new RV," "nice car, truck and SRV Jeep."[41] On September 11, 2017, Tarlecki read the Mordans' letter aloud at a public Township meeting.[42]

### 5. Contact with the Northampton County Children and Youth Services Agency

At one point, the Northampton County Children and Youth Services agency contacted McGee about arranging for an inspection of one of the apartments he owned.[43] McGee speculates that Croker, Tarlecki, and/or Shriner contacted

---

[38]   *Id.* at ¶ 9.

[39]   Doc. 39 at ¶ 12; Doc. 21 Ex. 8. The parties dispute the motivation behind this letter. McGee stated in his deposition that Shriner instructed the Mordans to write the letter. *See, e.g.*, Doc. 41-1 at 41. Shriner denied making such an instruction. *See* Doc. 43-2 at 18.

[40]   Doc. 41-2 at 118.

[41]   *See* Doc. 21 Ex. 8.

[42]   Doc. 41-3 at 27; *see* Doc. 21 Ex. 9.

[43]   Doc. 41-2 at 113-14.

Children and Youth Services to plant the seeds for this inspection. But he has no objective evidence of any of these Defendants doing this.[44] Croker did not contact Children and Youth Services, or a code enforcement officer, about McGee's properties.[45] Shriner did not contact Children and Youth Services about McGee's properties.[46] More broadly, Shriner did not contact any authorities about McGee.[47]

### 6. An IRS Audit and Other Tax Issues

On or about June 23, 2017, McGee received a notice from the IRS indicating he was going to be subject to an audit for tax year 2015. McGee speculates that Defendants were responsible for this audit. But McGee has no proof in support of his belief.[48]

Sometime after January 1, 2018, McGee learned that Tarlecki had contacted Berkheimer Tax Administration Services (her former employer, and the agency that collected the Township's taxes) about McGee and the taxes he paid to the Township.[49] McGee agreed at his deposition that if Tarlecki was contacting Berkheimer as part of her then-position as Secretary of the Township's Sewer

---

[44] Doc. 39 at ¶ 31.

[45] *Id.* at ¶ 38.

[46] *Id.* at ¶ 48.

[47] *Id.* at ¶ 50.

[48] Doc. 41-2 at 85.

[49] *Id.* at 86-87, 107.

Authority, this would have "nothing to do with her position as a Township Supervisor."[50]

### C.    Analysis

#### 1.    Count I – First Amendment Retaliation

##### a.    Legal Standards

This count, as well as Count II, proceeds under 42 U.S.C. § 1983, which provides a cause of action to redress violations of federal law that state officials commit.[51]  Section 1983 does not provide a plaintiff substantive legal rights; rather, it merely allows a plaintiff redress for a defendant's underlying violations of constitutional rights.[52]  To establish a claim under Section 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law.[53]

The First Amendment to the United States Constitution protects a citizen's right to speech. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public

---

[50]  *Id.* at 109-110.

[51]  *See* 42 U.S.C. § 1983.

[52]  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 815 (1985).

[53]  *See Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).  The parties do not appear to dispute that Defendants were acting under the color of state law.  My application will focus on whether Defendants deprived McGee of the above legal rights.

official for the exercise of that right."[54]  To prevail on a claim for First Amendment

retaliation brought under 42 U.S.C. § 1983, a plaintiff must prove (1) that he had

"engaged in [First Amendment-]protected activity," (2) that the defendant's

allegedly retaliatory action was "sufficient to deter a person of ordinary firmness

from exercising [her First Amendment] rights," and (3) that there was a "causal

connection between the protected activity and the retaliatory action."[55]

    To establish such a "causal connection," a plaintiff must prove either "an

unusually suggestive temporal proximity between the protected activity and

allegedly retaliatory action" or "a pattern of antagonism coupled with timing to

establish a causal link."[56]  However, "[i]n the absence of that proof the plaintiff

must show that from the 'evidence gleaned from the record as a whole' the trier of

the fact should infer causation."[57]  "A court must be diligent in enforcing these

causation requirements because otherwise a public actor cognizant of the

possibility that litigation might be filed against him, particularly in his individual

---

[54] *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000); *see also ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."); *Pickering v. Board of Educ.*, 391 U.S. 563, 574 (1968) (noting that retaliatory acts are "a potent means of inhibiting speech").

[55] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[56] *Id.*

[57] *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate."[58]

### b. Application

McGee claims in the Second Amended Complaint that he "was exercising his right to Free Speech by requesting information and expressing concerns about over billing."[59] The parties do not dispute that this constituted protected activity for First Amendment retaliation purposes. The parties also do not appear to dispute whether there was a causal link between McGee's activity and Defendants' conduct.

What the parties do dispute is whether Defendants' conduct constituted adverse actions. With respect to Tarlecki's Right-to-Know request, Defendants offer details about how the Township conducts business: the Board needs a majority vote in order to exercise its authority. Defendants argue that Tarlecki's conduct in issuing a Right-to-Know request therefore does not suffice to make out a retaliation claim, because McGee has not alleged that Tarlecki conspired with other Supervisors so to create the requisite majority.[60] Defendants also argue that Tarlecki's Right-to-Know request did not constitute an adverse action because this

---

[58] *Id.*

[59] Doc. 21 at ¶ 106.

[60] *See* Doc. 40 at 9-11.

request was a "legal nullity" that was only advanced by one Supervisor, not a majority of the Board.[61]

Defendants argue that what McGee perceives as other adverse actions do not hold up under the summary judgment standard.

    a.  *The Mordans' letter*: Defendants argue that "[t]here is no evidence," beyond McGee's own testimony, that they had any role in "directing or compelling" the Mordans to write their letter that was then read aloud at a Township meeting.[62]

    b.  *The IRS audit*: Defendants argue that McGee has presented no evidence that Tarlecki was responsible for his IRS audit.[63]

    c.  *Contact with Berkheimer*: Defendants argue that Tarlecki's contact with Berkheimer was in the context of the role she played as Secretary of the Township's Sewer Authority, and that McGee "has no evidence to support his inference that contact with Berkheimer was [in] any way improper."[64]

    d.  *Contact with Youth Services*: Defendants argue that McGee has not presented any evidence that Defendants contacted Youth Services about him.[65]

In opposition, McGee argues that the Court should find the following adverse actions. McGee's argument here does not include any citations to the record.[66]

---

[61]  *See id.* at 11-12.

[62]  *See id.* at 13-14.

[63]  *See id.* at 14.

[64]  *See id.* at 14.

[65]  *See id.* at 14-15.

[66]  *See id.* at 3-5.

a. The "Defendants sought out his own personal confidential information" – by issuing Tarlecki's Right-to-Know request – "and refused to explain to him why they were demanding the same.

b. The "Defendants coerced two of his tenants to write a public letter and then the Defendants read said letter into the public record."

c. The Defendants made "reports to the IRS and Children & Youth [Services]."

With respect to the IRS audit, Children & Youth, and Tarlecki's contact with Berkheimer, the Third Circuit has held that a plaintiff's speculative deposition testimony cannot defeat a defendant's motion for summary judgment.[67] McGee has only presented speculation about these three events, and therefore the Court holds that they do not constitute adverse actions. With respect to Tarlecki's Right-to-Know request, this Court has held before that a local municipality serving Right-to-Know requests on a plaintiff did not constitute an adverse action, because, as the plaintiff was "not subject to Right-to-Know requests . . . he could have simply refused them."[68] The Court finds this logic compelling here, especially because McGee never complied with Tarlecki's Right-to-Know request. This "mere request for information" does not "rise[] to the level of retaliation.[69]

This leaves the Mordans' letter. In the First Amendment retaliation context, courts have declined to hold that mere "criticism, false accusations, or verbal

---

[67] *See Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005).

[68] *Adamitis v. Borough of Dickson City*, No. 3:16-CV-00497, 2017 WL 2633509, at *4 (M.D. Pa. June 19, 2017).

[69] *Id.*

reprimands" by a public official constitute adverse actions.[70]  There needs to be

something more: the "bite" of "a threat, coercion, or intimidation intimating that

punishment, sanction, or adverse regulatory action will imminently follow."[71]

McGee hasn't presented evidence of any such thing.  And, in general, the Court

will dismiss with prejudice McGee's First Amendment retaliation claim, because

McGee has not presented evidence that he suffered an adverse action.

### 2.   Count II – Fourteenth Amendment Due Process

#### a.   Legal Standards

The Fourteenth Amendment provides that no person shall be deprived "of

life, liberty, or property, without due process of law."[72]  This guarantee

encompasses both a substantive and procedural component.[73]  The Court, taking

McGee's direction, will consider Count II under the lens of substantive failure.

The substantive due process clause is a "component of the [Fourteenth

Amendment] that protects individual liberty against 'certain government actions

regardless of the fairness of the procedures used to implement them.'"[74]

Substantive due process, in turn, contains two separate analytical paths depending

---

70   *See Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003).

71   *Koren v. Noonan*, No. CIV.A. 12-1586, 2013 WL 5508688, at *2 (E.D. Pa. Oct. 3, 2013),
*aff'd*, 586 F. App'x 885 (3d Cir. 2014)

72   U.S. CONST. amend. XIV § 1.

73   *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of
S.E. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992)).

74   *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*,
474 U.S. 327, 331 (1986)).

on whether the government action at issue is legislative or non-legislative.[75]  This

case involves the non-legislative or executive act of Defendant board members.[76]

The Fourteenth Amendment primarily protects individuals from the arbitrary

exercise of power through executive action through procedural due process.[77]

However, our Court of Appeals has recognized that "a non-legislative government

deprivation 'that comports with procedural due process may still give rise to a

substantive due process claim upon allegations that the government deliberately

and arbitrarily abused its power.'"[78]

To prevail on a substantive due process claim under this theory, McGee

must prove that he has a "fundamental" liberty interest implicating Fourteenth

Amendment protection and that a defendant's conduct against said interest was "so

egregious, so outrageous, that it may fairly be said to shock the contemporary

conscience."[79]  Such arbitrary action violates substantive due process if it (1) goes

beyond "improper purpose" and "bad faith," and (2) has "no reasonable relation to

legitimate government objectives."[80]

---

[75]  *Nicholas,* 227 F.3d at 139.

[76]  *Id.* at 139 n. 1 ("As we have previously explained, '[e]xecutive acts, such as employment decisions, typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society.'") (citations omitted).

[77]  *Id.* at 139.

[78]  *Id.*

[79]  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

[80]  *United Artists Theatre Circuit, Inc. v. Twp. of Warrngton*, 316 F.3d 392, 402 (3d Cir. 2003).

A plaintiff "must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies."[81] In making this determination and in contrast to a procedural due process challenge, the Third Circuit has noted that:

> [W]hether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather depends on whether that interest is "fundamental" under the United States Constitution.[82]

### b.   Application

Defendants, perceiving McGee's due process claim as taking the procedural route, argue that this claim does not hold up because McGee availed himself of Pennsylvania's available process for challenging a denial of a Right-to-Know request.[83] In his opposition, McGee styles this claim as sounding in substantive (not procedural) due process.   In essence, McGee argues that what Defendants did here was so bad—so arbitrary, so irrational—that it constituted a violation of substantive due process.[84]

As with the Court's consideration of Defendants' earlier motion to dismiss, McGee has not sustained a substantive due process claim because he has not

---

[81]   *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 n.12 (3d Cir. 2006) (*quoting Nicholas*, 227 F.3d at 139-40).

[82]   *Nicholas*, 227 F.3d at 140 (citations omitted).

[83]   *See* Doc. 40 at 17-18.

[84]   *See* Doc. 50 at 5 ("The Plaintiff is alleging that he was denied his substantive due process rights . . .").

identified a protected property interest that Defendants infringed.[85]  Therefore, the

Court will dismiss with prejudice McGee's substantive due process claim.[86]

### 3.    Immunity Under the Political Subdivision Tort Claims Act

### a.    Legal Standards

The Political Subdivision Tort Claims Act grants municipal agencies

immunity from liability for all state law tort claims.[87]  The Act provides that "no

local agency shall be liable for any damages on account of any injury to a person

or property caused by any act of the local agency or an employee thereof or any

other person."[88]  This immunity is however waived for a narrow subset of

negligent acts by a municipality's agents or employees.[89]

### b.    Application

Here, none of the exceptions for negligent acts apply.  Therefore,

Defendants Conyngham Township and Conyngham Township Authority, as

municipal agencies, are entitled to immunity from the intentional torts that McGee

---

[85]   *See* Docs. 21, 50.

[86]   The Court has now dismissed both of McGee's Section 1983 claims with prejudice.  Because
of this, the Court does not find it necessary to analyze the secondary issues of (a) whether
Section 1983 municipal liability applies under *Monell* and (b) whether McGee should be
afforded punitive damages on his Section 1983 claims.  *See* Doc. 19 at 15-16, 23-24.

[87]   42 Pa.C.S.A. § 8541 *et. seq.  See also Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d
417, 424 (E.D. Pa. 2000) (DuBois, J.).

[88]   42 Pa.C.S.A. § 8541.

[89]   *Joyner v. Sch. Dist. of Philadelphia*, 313 F.Supp.2d 495, 504 (E.D. Pa. 2004). These acts
include liability arising from (1) the operation of motor vehicles, (2) the care, custody or
control of personal property, (3) the care, custody or control of real property, (4) trees, traffic
controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) the
care, custody or control of animals.  42 Pa. C.S.A. § 8542(b).

has alleged.[90]   Based on this, the Court dismisses McGee's intentional infliction of emotional distress claim and his defamation claim, both with prejudice, with respect to Defendants Conyngham Township and Conyngham Township Authority.

### 4.   Count III – Intentional Infliction of Emotional Distress

#### a.   Legal Standards

Under Pennsylvania law, "[t]o state a claim for intentional infliction of emotional distress, a plaintiff must plead that the defendant's conduct: (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe."[91]   "In order to state a cognizable claim, the conduct must be so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society."[92]   "Generally, the case must be one with respect to which the recitation of facts to an average member of the community would arouse his resentment against

---

[90]   *See Korth v. Hoover*, 190 F.Supp.3d 394, 408 (M.D. Pa. 2016) (Caldwell, J.) (holding that Oliver Township was immune from liability under the PSTCA for intentional torts of assault and battery); *Martin v. City of Reading*, 118 F.Supp.3d 751, 780 (E.D. Pa. 2015) (Leeson, J.) (holding that the City of Reading was immune from liability under the PSTCA for the intentional tort of defamation); *Roskos v. Sugarloaf Tp.*, 295 F.Supp.2d 480, 489-91 (M.D. Pa. 2003) (Conaboy, J.) (holding that Sugarloaf Township, Sugarloaf Township Police Department, and Sugarloaf Township Supervisors were immune from liability under the PTSCA for, among other counts, defamation and intentional infliction of emotional distress).

[91]   *Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[92]   *Id.* (internal quotation marks omitted).

the actor, and lead him to exclaim, 'Outrageous!'"[93] "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[94] Accordingly, a claim for intentional infliction of emotional distress must be dismissed where "[t]he defendants' alleged conduct is simply not sufficiently outrageous to sustain a claim of intentional infliction of emotional distress."[95] As such, "[w]ith regard to the element of outrageousness, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery."[96]

Pennsylvania law requires that some type of physical harm be shown in order to satisfy the severe emotional distress element.[97] In particular, a plaintiff must provide objective proof supported by competent medical evidence that the plaintiff actually suffered the claimed-of emotional distress.[98]

---

[93] *Robinson v. May Dep't Stores Co.*, 246 F. Supp. 2d 440, 444 (E.D. Pa. 2003) (internal quotation marks omitted).

[94] *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. Ct. 1996).

[95] *See Goodson v. Kardashian*, 413 F. App'x 417, 418 (3d Cir. 2011).

[96] *Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. Ct. 1993). *See, e.g.*, *Snyder v. Specialty Glass Products, Inc.*, 658 A.2d 366 (Pa. Super. Ct. 1995) (summary judgment granted in favor of defendant because plaintiff employee's suffering verbal abuse and demotion after arriving late to work was not outrageous as a matter of law); *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 398 (E.D. Pa. 2011) (motion to dismiss granted because defendant's failure to provide the plaintiff with medical leave and benefits, and its subsequent termination of the plaintiff, was not outrageous as a matter of law).

[97] *DiLoreto v. Costigan*, 600 F. Supp. 2d 671, 691 (E.D. Pa. 2009); *Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994).

[98] *See Katazsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987).

### b. Application

Defendants argue that McGee's claim for intentional infliction of emotional distress, under Pennsylvania state law, does not hold up because McGee has presented no objective medical proof that he suffered any distress.[99] McGee does not reference any such medical proof in his opposition.[100] The Court, therefore, dismisses McGee's claim for intentional infliction of emotional distress with prejudice.

### 5. Count IV – Defamation[101]

#### a. Legal Standards

To succeed on his defamation claim under Pennsylvania state law, McGee must prove:[102]

(1)  The defamatory character of the communication;
(2)  Its publication by the defendant.
(3)  Its application to the plaintiff.
(4)  The understanding by the recipient of its defamatory meaning.
(5)  The understanding by the recipient of it as intended to be applied to the plaintiff.
(6)  Special harm resulting to the plaintiff from its publication.
(7)  Abuse of a conditionally privileged occasion.

---

[99]  *See* Doc. 40 at 18-19.

[100]  *See* Doc. 50.

[101]  McGee has styled this count as libel and slander. My analysis will refer to this count as defamation, as libel and slander are two methods for proving this cause of action. *See Mzamane v. Winfrey*, 693 F.Supp.2d 442, 476 (E.D. Pa. 2010) (quoting *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008) ("Defamation, of which libel, slander, and invasion of privacy are methods, is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements.")).

[102]  42 Pa. C.S.A. § 8343(a).

### b.    Application

Defendants argue that McGee has failed to prove that the reading of the Mordans' letter was defamatory, because (a) McGee has failed to prove the defamatory character of the Mordans' letter, and (b) McGee has presented no factual evidence that Defendants "authored or orchestrated" the letter in their role as Township Supervisors.[103]

McGee opposes this argument with the following statements:[104]

a) "The letter that was read into the public record specifically called into question the reputation of the Plaintiff."

b) "That letter was fabricated by the demands of the Defendant, Shriner, who took advantage of a handicapped couple."

c) "The letter was meant to harm the reputation of the Plaintiff as well as to get him to back off from in inquiries into township finances."

d) "The Plaintiff was engaged in the residential rental business and this type of public comment harmed his reputation."

Defendants also argue that even had McGee made out a *prima facie* case of defamation, they were immune from suit because they were exercising their duties as municipal officials.[105]  Defendants cite a Pennsylvania statute that provides official immunity for employees of local agencies when their actions were "authorized or required by law" or the employee "in good faith reasonably believed" as such, or when "the act of the employee which gave rise to the claim

---

[103]  *See* Doc. 40 at 19-20.

[104]  Doc. 50 at 12.

[105]  *See* Doc. 40 at 20-21.

was within the policymaking discretion granted to the employee by law."[106]
McGee opposes what he perceives to be Defendants' employment of the qualified
immunity doctrine; but McGee does not oppose Defendants' Pennsylvania law
official immunity argument.[107]

I find that at this stage of the litigation, the Court cannot hold as a matter of
law that McGee has not proven all seven elements of his defamation claim.
McGee has at least raised a genuine dispute of material fact concerning the
Mordans' letter's defamatory character and its publication by Defendants at the
Township public meeting of September 11, 2017. Therefore, Defendants'
argument that they are entitled to summary judgment by virtue of McGee not
making out his *prima facie* case fails.[108]

Likewise, McGee and Defendants genuinely dispute the origin and
motivation of the Mordans' letter. This creates a corresponding genuine dispute of
material fact—the Court would have a difficult time holding that Shriner was
authorized, or within his policymaking discretion, to coerce the Mordans into
writing their letter. Therefore, the Pennsylvania statute providing official

---

[106] 42 Pa. C.S.A. § 8546.

[107] *See* Doc. 50 at 11-12.

[108] *See Vizant Techs., LLC v. Whitchurch*, No. CV 15-431, 2016 WL 97923, at *19 (E.D. Pa. Jan. 8, 2016), *aff'd*, 675 F. App'x 201 (3d Cir. 2017), *as amended* (Feb. 2, 2017) (denying defendants' motion for summary judgment on defamation claim due to genuine disputes of material fact).

immunity does not protect Defendants—at least, not at this summary judgment stage.[109]

## III. CONCLUSION

For the above reasons, the Court grants in part and denies in part Defendants' motion for summary judgment.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge

---

[109] *See* 42 Pa. C.S.A. § 8550 (exception to immunity for willful misconduct); *see Fulks ex rel. Daniel v. Gasper*, 439 F. Supp. 2d 372, 378 (M.D. Pa. 2006) (applying the willful misconduct exception)*; see Valentino C. v. Sch. Dist. of Philadelphia*, No. CIV.A. 01-2097, 2004 WL 225038, at *9 (E.D. Pa. Feb. 3, 2004) ("Conversely, to the extent that the employee acted outside of his official duties, then the employee may be personally liable for the tortious conduct."); *see generally Hixon v. Durbin*, 560 F. Supp. 654, 666 (E.D. Pa. 1983) (denying summary judgment on defendant's invocation of official immunity doctrine as plaintiff had demonstrated genuine dispute over whether defendant was acting "within the course of his official duties"). This is independent from the Court's above holding concerning municipal immunity.